UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BIBI DE MALMANCHE,<br><br>                              Plaintiff,<br><br>-against-<br><br>GLENROCK ASSET MANAGEMENT ASSOCIATES, L.P., GLENROCK, INC. and REYNARD ASSET MANAGEMENT, INC.,<br>                              Defendants. | 07-CV-10940 (CM) (KNF)<br><br>**AFFIDAVIT OF MARK J. HYLAND IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |

STATE OF NEW YORK  )
                            : ss.:
COUNTY OF NEW YORK)

MARK J. HYLAND, being duly sworn, deposes and says:

1. I am a member of the firm of Seward & Kissel LLP, One Battery Park Plaza, New York, New York 10004, attorneys for defendants Glenrock Asset Management Associates, L.P., Glenrock, Inc. and Reynard Asset Management, Inc. (collectively, "Defendants"). I am familiar with the facts set forth herein, and I make this affidavit in support of Defendants' motion pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings.

2. Attached hereto as Exhibit A is a copy of the Introducer Agreement by and among Plaintiff Bibi DeMalmanche and Glenrock Global Partners, dated as of November 23, 2003 (the "Introducer Agreement")(also attached as Exhibit A to the Complaint).

3. In the Introducer Agreement, the parties expressly agreed to a dispute resolution procedure. Specifically, Paragraph 9.1 of the Introducer Agreement sets forth the following procedure: "Any dispute or difference as to the fees payable hereunder shall be

referred to the Administrator." To Defendants' knowledge, Plaintiff has not complied with Paragraph 9.1.

4. In the investment management field, an administrator performs administrative services and acts as a registrar and a transfer agent for investment funds pursuant to administration agreements between the funds and the administrator. Duties of an administrator vary depending on the specifics of the administration agreement, but typically include (a) maintaining the register of the investors of the investment fund; (b) performing all actions related to the issuance, transfer and redemption of shares in the investment fund; (c) reviewing subscriptions for investments in the investment fund and receiving payment for those investments; (d) publishing and calculating the net asset value of the investment fund; (e) keeping the accounts and financial books and records of the investment fund; and (f) preparing and furnishing annual financial statements and monthly estimates regarding the investment fund's performance.

5. Attached hereto as Exhibit B is a copy of excerpts from the transcript of Plaintiff Bibi DeMalmanche's deposition taken on April 11, 2008, evidencing her admission that she did not follow the dispute resolution procedures set forth in the Introducer Agreement.

_____
Mark J. Hyland

Sworn to before me

June 23 2008

_____
Notary Public

CHRISTINE RAMIREZ
Notary Public, State of New York
No. 01RA6089494
Qualified in Queens County
Commission Expires Mar. 24, 2011

SK 01828 0009 894411

2

# Exhibit A

Case 1:07-cv-10940-KNF     Document 18-2     Filed 06/23/2008     Page 1 of 12

<u>Private and Confidential</u>

Dated **Nov. 24** 2003

Glenrock Asset Management Associates, L.P., Glenrock Inc., Reynard Asset Management, Inc.

and

_____

INTRODUCER AGREEMENT

ISLA350/32433/60241N-1.DOC

Contents

| Clause | | Page |
|---|---|---|
| 1 | Definitions and Interpretations | 3 |
| 2 | Appointment | 4 |
| 3 | Duties as Introducer | 5 |
| 4 | Fees and Commissions | 6 |
| 5 | Restriction on Delegation | 7 |
| 6 | Indemnities | 7 |
| 7 | Termination | 7 |
| 8 | Disclosure and Non-Solicitation | 9 |
| 9 | Dispute, Complaints and Compensation | 10 |
| 10 | Entire Agreement | 10 |
| 11 | Variation of the Agreement in Writing | 10 |
| 12 | Miscellaneous | 10 |
| 13 | Notices | 11 |
| 14 | Counterparts | 11 |
| 15 | Governing Law and Jurisdiction | 11 |

THIS AGREEMENT is made on ~~Nov. 24~~, 2003

BETWEEN:

(1) Glenrock Asset Management Associates, L.P., Glenrock Inc. and Reynard Asset Management, Inc. of 237 Park Avenue, 8th Floor, New York, NY 10017, USA (collectively referred to as "Glenrock").

(2) Bibi de Malmanche (the "Introducer").

WHEREAS:

(A) The Introducer is an independent intermediary regulated in the conduct of its investment business by the Financial Services Authority (the "FSA") who wishes to introduce companies or persons which are potential investors to Glenrock for the purpose of investing in any fund or managed account managed or advised by Glenrock or its principal, Michael Katz (collectively, such funds and managed accounts shall be referred to as the "Glenrock Funds"). Glenrock is engaged in the business of discretionary investment management portfolio services.

(B) Glenrock wishes to appoint the Introducer on a non-exclusive basis to introduce Investors to the Glenrock Funds.

(C) The Introducer wishes to introduce to Glenrock suitable investors to invest in the Glenrock Funds.

NOW IT IS HEREBY AGREED as follows:

1   **Definitions and Interpretations**

1.1 In this Agreement (which includes the Recitals) unless the context otherwise requires the following expressions have the following meanings:

"Agreement" means this Agreement;

"Appointment" means the appointment of the introducer under clause 2;

"Administrators" means the administrators for the time being of the Glenrock Funds;

"Introduced Investors" means any investors exclusively introduced by the Introducer as prospective investors in the Glenrock Funds, and who purchase shares or interests in the Glenrock Funds or enter into managed account or advisory agreements with Glenrock prior to this Agreement being terminated, and who have been agreed by Glenrock prior to the introduction to be introduced

IMA350/12435/6024IN-1.DOC

investors which shall include investors acting/investing through a trustee and/or custodian;

"Laws" means all laws and regulations applicable to the activities of the Glenrock Funds, Glenrock and the Introducer pursuant hereto;

"Management Agreements" means (i) the relevant management agreements between Glenrock and the Glenrock Funds, as amended from time to time and (ii) any managed account or advisory agreement between Glenrock and an Introduced Investor, as amended from time to time;

"Termination" means the termination of the appointment of the Introducer pursuant to this Agreement;

Any reference to Glenrock or the Introducer, or their assigns, includes a reference to its, his or their duly authorised agents or their delegates.

1.2. The headings to clauses are for convenience and shall have no legal effect.

1.3. Reference to clauses are reference to clauses in this Agreement unless otherwise stated or the context otherwise requires.

1.4 Unless the context otherwise requires, reference to any statute shall include any statutory modification or re-enactment thereof for the time being in force (and to any orders, regulations instruments or subordinate legislation made under the relevant statute or statutory provision).

2 Appointment

2.1 Glenrock hereby appoints the Introducer to introduce investors to the Glenrock Funds on and subject to the terms herein contained until the Appointment shall be terminated as hereinafter provided. The Introducer hereby accepts such Appointment and agrees to provide the services set forth herein.

2.2 The Introducer hereby represents to Glenrock that:

2.2.1 the Introducer has full capacity and authority to enter into and implement the terms of this Agreement;

2.2.2 the Introducer acknowledges that certain interests in the Glenrock Funds have not been registered under the Securities Act of 1933, as amended (the "Act"), and it is intended that such interests shall not be required to be registered under the Act by virtue of the exemption afforded by Regulation D thereof;

2.2.3   the Introducer will comply with the applicable requirements of the Act, including Regulation D promulgated thereunder, and of the Securities and Exchange Act of 1934, as amended (including all regulations, rules and releases under either statute), with the state securities laws of the state or jurisdiction in which such sale is made and with all applicable rules and regulations of the NASD or any securities exchange in which you are a member;

2.2.4   the Introducer will comply with such procedures and employ such questionnaires as may be prepared by Glenrock for prospective investors and their investor representatives, if any, as may be necessary in order that no act or omission to act by the Introducer in connection with Glenrock's offerings shall cause the exemptions from registration under the Act provided by Rule 506 of Regulation D thereunder to become unavailable;

2.2.5   the Introducer will solicit subscriptions only of Investors who have received a copy of the relevant offering materials of the Glenrock Funds and will not give any information or make any representation other than those contained in the relevant offering materials of the Glenrock Funds, or to offer an investment in the Glenrock Funds to any potential investor or to the public through any advertisement, article, notice or communication published in any newspaper, magazine or similar media or broadcast over television or radio, or any meeting or seminars (except for meetings with individual investors) which, in each case, has not been authorized by Glenrock;

2.2.6   the Introducer has all necessary licenses, registrations and permits to act as the Introducer hereunder in all applicable jurisdictions (including registration as a broker-dealer or equivalent qualification); and

2.2.7   the execution and delivery of, and the performance by the Introducer of its obligations under, this Agreement will not result in a breach of any contract or order, judgement or decree of any court or governmental agency to which the Introducer is a party or by which the Introducer is bound, or any statutes, laws, rules of regulations of any country, state, governmental agency or self-regulatory agency applicable to the Introducer or its business.

3   **Duties as Introducer**

3.1   Glenrock appoints the Introducer on a non-exclusive basis to introduce investors to Glenrock, who are suitable investors or clients for Glenrock Funds.

3.2   The Introducer shall only introduce to Glenrock investors to whom an investment in or managed account client relationship with Glenrock Funds can be made consistent with the law of the jurisdiction in which the investor resides and with

the law of the jurisdiction in which the Glenrock Funds are domiciled or listed and with all laws and regulations of the United States. Introducer shall make such inquiries to each prospective Introduced Investor as are necessary to determine such prospective Introduced Investors suitability.

3.3   In connection with its introduction activities on behalf of Glenrock, Introducer shall use only offering and disclosure documents prepared by Glenrock or the Glenrock Funds and such other materials as are approved in writing by Glenrock.

3.4   The Introducer agrees (i) to keep confidential the identity of investors in the Glenrock Funds and all personal information relating to investors in the Glenrock Funds; (ii) that all materials provided to the Introducer for due diligence and marketing purposes pertaining to the Glenrock Funds, including, but not limited to, descriptions of investments sample investor correspondence and status reports, and financial statements of the Glenrock Funds will be held by the Introducer in confidence for use only for the purpose of evaluating investments in the Glenrock Funds and will not be provided to any other persons or entities without the prior written approval of Glenrock.

3.5   Introducer agrees that it will not, without the prior consent of Glenrock, solicit business from any of Glenrock's (or its affiliates') investors whom Introducer did not previously know and of whom obtains knowledge as a result of such investor's participation as a subscriber in the Glenrock Funds.

4     **Fees and Commissions**

4.1   Glenrock shall pay to the Introducer:

33 1/3% of investment management and performance fees from time to time received by Glenrock from the Glenrock Funds only in respect of shares or interests owned by each Introduced Investor in any Glenrock Funds or account managed for any Introduced Investor by Glenrock (together, the "Fees"), such fees to be accrued monthly and paid in arrears on a quarterly basis, within 10 days of their receipt by Glenrock, which amount shall be paid during the term of this Agreement and until the first to occur of the following: (i) the applicable Introduced Investor is no longer a Glenrock Fund investor or managed account client provided that if the aggregate net assets of either of the two Glenrock funds or the two Reynard funds, as the case may be, exceed $100 million, the percentage paid to Introducer for subsequent contributions by Introduced Investors of the applicable funds shall be reduced to 20%.

4.2   Notwithstanding the terms of Section 4.1, fees shall cease to be payable with respect to any Introduced Investor if the Management Agreement between Glenrock and the Glenrock Fund in which such Introduced Investor invested or through which such Introduced Investor's account is managed is terminated, save that any fees accrued prior to such termination shall remain payable.

IMA350032435/60240N-I DOC

4.3 The Fees shall be payable without any withholdings, deductions, set offs or counter-claims of any kind. If any withholding or deduction shall nevertheless be required by law, Glenrock shall take all necessary steps within its power to release the full amount of the Fees to the Introducer, and if Glenrock does not take such steps within its power then the Fees shall be increased by an amount which, after any such legally required withholding or deduction, shall be equal to the Fees otherwise payable.

4.4 Glenrock agrees with the Introducer throughout the term of this Agreement:

 4.4.1 to keep proper and up to date books of account and records showing the revenues referred to in clause 4.1 above; and

 4.4.2 to make available to the Introducer on request any books of account, records, reports, returns and other information relating to the revenues referred to in clause 4.1 above as the Introducer may reasonably require, and to allow the authorised officers and employees of the Introducer to have access to such information and to take copies of such documents as required.

5 **Restriction on Delegation**

The Introducer shall not have power to delegate the whole or any part of his functions hereunder to any person without the prior written consent of Glenrock.

6 **Indemnities**

6.1 Each party agrees to indemnify and hold the other party harmless from any loss, damage, liability or expense, including reasonable attorneys' fees and other legal expenses, to which the other party may become subject arising out of or relating to any act or omission by the indemnifying party (or any person connected or associated with the indemnifying party) which is or is alleged to be violation of any applicable statutes, laws or regulations or arising from the negligence or willful misconduct of the indemnifying party.

7 **Termination**

7.1 Subject to clause 7.4, 7.5 and 7.6 the Introducer shall be entitled to resign the Appointment hereunder:

 7.1.1 by giving not less than three months' notice in writing to Glenrock;

 7.1.2 at any time on giving written notice to Glenrock if Glenrock shall go into liquidation (except a voluntary liquidation for the purposes of reconstruction or amalgamation upon terms previously approved in writing by the Introducer, such approval not to be unreasonably withheld

or delayed) or commit any other act of bankruptcy under the relevant legislation or if a receiver is appointed over any assets owned by Glenrock;

7.1.3 at any time on giving written notice to Glenrock if the Glenrock Funds shall go into liquidation (except a voluntary liquidation for the purposes of reconstruction or amalgamation upon terms previously approved in writing by the Introducer (such approval not to be unreasonably withheld or delayed) or commit any other act of bankruptcy under the relevant legislation or if a receiver is appointed for any of the assets of the Glenrock Funds; or

7.1.4 at any time on giving written notice to Glenrock if Glenrock shall commit any material breach of its obligations under this Agreement and (if such breach shall be capable of remedy) shall fail within 30 days of receipt of notice served by the Introducer requiring it so to do to make good such breach.

7.2 Subject to clause 7.4 Glenrock may terminate the Appointment of the Introducer hereunder without liability:

7.2.1 by giving not less than three months' notice in writing to the Introducer;

7.2.2 at any time by immediate notice on giving written notice to the Introducer if the Introducer shall go into liquidation (except a voluntary liquidation for the purposes of reconstruction or amalgamation upon terms previously approved in writing by Glenrock, such approval not to be unreasonably withheld or delayed) or commit any other act of bankruptcy under the relevant legislation or if a receiver is appointed over any assets owned by the Introducer;

7.2.3 the Introducer ceases or fails to hold any license, permit or authorisation required by him to perform his duties hereunder;

7.2.4 at any time on giving written notice to the Introducer if the Introducer shall commit any material breach of its obligations under this Agreement and (if such breach shall be capable of remedy) shall fail within 30 days of receipt of notice served by Glenrock requiring him so to do to make good such breach.

7.3 <u>Subject to clause 7.4, 7.5 and 7.6,</u> Glenrock may terminate its participation in this Agreement immediately without liability upon the Management Agreements for the Glenrock Funds terminating or being terminated.

7.4 Any Termination of this Agreement shall be without prejudice to any claim by any party against the other party for any breach of the terms hereof committed

IMA350/32435/6024IN-1.DOC

prior to such Termination or any other rights which have accrued hereunder to either party.

7.5  In the event of Termination other than in relation to Termination resulting from the liquidation of Glenrock or the Glenrock Funds, the Introducer shall be entitled to be paid:

7.5.1  Fees resulting from all existing investments from Introduced Investors at the date of Termination for the duration of such investment; and

7.5.2  Fees resulting from any investments made by Introduced Investors during and for a period of 12 months from the date of Termination.

7.6  In the event that the Management Agreements or any of them are to be varied in whole or in part, Glenrock shall immediately following such variation agree to variations (if required) to this Agreement with a view to maintaining the relative commercial position between Glenrock and the Introducer reflected in this Agreement based on the existing Management Agreements.

8  **Disclosure and Non-Solicitation**

8.1  No party hereto shall during the continuance of this Agreement or after its termination disclose to any person, firm, company, institution or other third party except with the authority of the other party or as otherwise required by the Laws) or use for its own benefit or for the benefit of any third party, other than in furtherance of its obligations hereunder, any information relating to the business, investments, finances or other matters of a confidential nature of any other party of which it may in the course of its duties hereunder or otherwise become possessed and each shall use all reasonable endeavors to prevent any such disclosure as aforesaid. This paragraph shall survive the termination of this Agreement.

8.2  Introducer agrees and covenants that during the term of this Agreement and for a period of twenty-four twelve (12) months thereafter, irrespective of whether the term of this Agreement was ended by Introducer or Glenrock, Introducer will not, directly or indirectly, solicit any person who is or has been an employee of Glenrock or any affiliate of Glenrock at the end of the term or within the twelve (12) months preceding such date, to become an employee of Introducer or of any person or entity associated or affiliated with Introducer, or to be engaged on a contractor basis by Introducer or any person or entity associated or affiliated with Introducer. This paragraph shall survive the termination of this Agreement.

9  **Dispute, Complaints and Compensation**

9.1  Any dispute or difference as to the fees payable hereunder shall be referred to the Administrator.

9.2 In relation to any dispute or difference, the Administrator shall be deemed to be acting as experts and not as arbitrators and their determination as to the amount of such fees shall be final and binding on the parties.

9.3 Any payment required to be made by either party in consequence of such determination shall be made within 14 days thereof, or as soon thereafter as possible.

## 10 Entire Agreement

10.1 The Appointment shall be on the terms of this Agreement which said terms shall be in substitution for all other terms.

10.2 This Agreement sets forth the entire agreement and understanding between the parties in connection with the management arrangements described herein and neither party has relied on any warranty or representation of the other party except as expressly stated or referred to in this Agreement.

## 11 Variation of the Agreement in Writing

Save as otherwise expressly provided herein, no variation or addition to this Agreement shall be valid unless made in writing and signed by both parties.

## 12 Miscellaneous

12.1 No failure on the part of any party hereto to exercise, and no delay on its part in exercising, any right or remedy under this Agreement will operate as a waiver thereof nor will any single or partial exercise of any right or remedy preclude any other or further exercise thereof or the exercise of any other right or remedy. The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights or remedies provided by law.

12.2 The Introducer may not assign any of its rights or obligations hereunder without the prior written consent of Glenrock.

12.3 The illegality, invalidity or unenforceability of any provision of this Agreement under the law of any jurisdiction shall not affect its legality, validity or enforceability under the law of any other jurisdiction nor the legality, validity or enforceability of any other provision.

## 13 Notices

13.1 Any notice or other document to be given under this Agreement shall be in writing and shall be deemed duly given if left at or sent by first class post or other fast postal service or delivered by internationally recognized courier with a

written confirmation sent by one of the aforementioned methods to the respective addresses shown on the face hereof or other of the respective registered offices or principal places of business for the time being of the parties and shall be deemed to have been received when in the ordinary course of the means of transmission it would first be received by the addressee in normal business hours.

13.2    In providing the giving of a notice it shall be sufficient to prove that the notice was left, that the envelope containing such notice was properly addressed and posted, that the notice was sent by courier and either delivered or delivery was refused, and the written confirmation left, posted properly or delivered.

14    **Counterparts**

This Agreement may be entered into in any number of counterparts and by the parties hereto on separate counterparts, each of which when so executed and delivered shall be an original, but all the counterparts shall together constitute one and the same instrument.

15    **Governing Law and Jurisdiction**

15.1    This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

15.2    Both parties hereby irrevocably submit to the jurisdiction of the courts of the State of New York but this Agreement may be enforced in any court of competent jurisdiction.

IN WITNESS WHEREOF, this Agreement has been executed by or on behalf of the parties hereto on the day and year first above written.

SIGNED BY
for and on behalf of
Glenrock Global Partners    _[signature]_ (Michael Katz)
Director


SIGNED BY
for and on behalf of bibi de Malmanche
_[signature]_  bibi de Malmanche
Director

01828.0005 #389669

IMA350/32435/60241N-1.DOC

# Exhibit B

COPY

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASE NO.:  07-CV-10940(CM)(KNF)

------------------------------------x
BIBI DE MALMANCHE,

                Plaintiff,

   -against-

GLENROCK ASSET MANAGEMENT
ASSOCIATES, L.P., GLENROCK, INC.,
and REYNARD ASSET MANAGEMENT, INC.,

                Defendants.
------------------------------------x

                April 11, 2008
                9:34 a.m.

       Deposition of BIBI de MALMANCHE taken by attorneys for Defendants, pursuant to Notice, held at the offices of Seward & Kissel, LLP, One Battery Park Plaza, New York, New York, 10004, New York 10038, before Janet Hamilton, RPR, (1991), and Notary Public.

WINTER REPORTING, INC.  212.953.1414

```
                 1              (De Malmanche, 4/11/08)
17:11:13         2    to the amount of fees in dispute between you and
17:11:17         3    Glenrock?
17:11:18         4         A.    I read the contract and that
17:11:26         5    particular document.  So -- yes.  The answer is
17:11:29         6    yes.
17:11:30         7         Q.    But prior to engaging counsel -- I
17:11:32         8    understand you didn't contact the administrator.
17:11:35         9    Did you take any efforts to refer the dispute to
17:11:38        10    the fund administrator?
17:11:40        11         A.    I did not.
17:11:41        12         Q.    You knew who the fund
17:11:42        13    administrator was at that time?
17:11:46        14         A.    At what time?
17:11:47        15         Q.    Well, at the time --
17:11:50        16         A.    When I was working for Mr. Katz I
17:11:53        17    knew who the administrator was.
17:11:55        18         Q.    Yes.
17:11:56        19         A.    When I finished working for
17:11:57        20    Mr. Katz I probably did not know who the
17:11:59        21    administrator was.  But I did understand they
17:12:02        22    had changed administrators, to the best of my
17:12:06        23    knowledge.
17:12:06        24         Q.    Did you make any effort to
17:12:07        25    determine whether or not the administrator had
```

```
              1                    (De Malmanche, 4/11/08)
17:12:10      2     changed?
17:12:10      3               A.   I may have done.  Because I would
17:12:13      4     have seen Mr. Katz's results.  And that would
17:12:18      5     include the administrator's name.
17:12:23      6               Q.   Did you make any effort to refer
17:12:26      7     your dispute over the fees to the administrator
17:12:33      8     once you had seen the administrator's name and
17:12:37      9     Mr. Katz's results?
17:12:39     10               A.   I did not.
17:13:06     11               Q.   Sitting here today -- we looked at
17:13:12     12     your list of introduced investors previously.
17:13:16     13     Sitting here today do you have an understanding,
17:13:19     14     personal understanding separate from documents,
17:13:23     15     as to the amount of damages you're claiming for
17:13:26     16     those individual investors?
17:13:28     17               A.   I do not.
17:13:30     18               Q.   And you don't know -- strike that.
17:13:37     19                    Do you have any understanding as
17:13:38     20     to whether those investors have been contacted
17:13:41     21     by other marketers regarding the Glenrock funds
17:13:46     22     since the termination of your relationship with
17:13:49     23     Glenrock?
17:13:50     24               A.   Specifically which investors?
17:13:53     25               Q.   Well, the investors on your list
```

```
              1                  (De Malmanche, 4/11/08)
17:29:49      2    not a custodian to Mr. Katz.  Fortune invested,
17:29:53      3    or GFA invested, or the entity invested.  I have
17:29:58      4    not said that they're a custodian.  And so I
17:29:59      5    don't see how that relates to your question.
17:30:00      6         Q.     Well, Fortune is a marketer of
17:30:03      7    hedge funds, isn't it?
17:30:05      8         A.     But they're not a custodian.  And
17:30:07      9    I think your question was regarding custodians
17:30:07     10    and nominees.
17:30:08     11         Q.     Well, I was.  But I was responding
17:30:10     12    to your answer regarding the fairness of the
17:30:13     13    claim.
17:30:14     14                Is it a fact that you're now
17:30:16     15    claiming a share of management and incentive
17:30:20     16    fees for the investments by investors with whom
17:30:26     17    you have had no contact?
17:30:28     18         A.     I'm referring that to counsel.
17:30:30     19    Because it is not an answer that is relevant in
17:30:34     20    all cases.  Specifically in some cases, yes.
17:30:37     21    And in other cases, no.  It will depend upon
17:30:40     22    which investor they are referring to.
17:30:43     23         Q.     Do you intend to identify those
17:30:44     24    investors in this litigation?
17:30:47     25         A.     Absolutely.
```